Good morning, your honors. Morris Hill on behalf of appellants. I would like to reserve five minutes for rebuttal, please. This is a case that this is an interlocutory appeal from a denial of qualified immunity. The appeal is based solely on the second prong of qualified immunity. Whether the law was clearly established at the time of the incident, whether a robust consensus, a persuasive authority would have put any reasonable person on notice that what the deputies did in this case violated, in this case, the Fourth Amendment. We have Deputy Block who shot Mr. Kendrick and according to the District Court, the District Court based its denial of qualified immunity on the statement that shooting an individual with his arms outstretched constitutes a Fourth Amendment violation. That's found at excerpts of record 27 and 28. The problem with that statement is it defines qualified immunity at too high a level of generality. It's like saying that excessive force violates the Fourth Amendment. The fact that somebody is standing with his arms outstretched does not tell you enough about what that person was doing to put a reasonable person on notice. Obviously, if all the person was doing is holding his arms outstretched, that would be a Fourth Amendment violation to shoot him, but you have to consider the totality of circumstances. In this case, what were the undisputed facts? And the undisputed facts in this case is that he held a shotgun in one hand. Which was not pointed toward the officer. Right. Well, the officer says he was in the process of pointing him toward him, but we can't go there. You can't go there. Because we have to assume the state of facts that the District Court assumed, which is that he is holding a shotgun not pointed at Mr. Kendrick in his outstretched hands. How long does it take to wheel a shotgun around and point it at somebody and fire? A split second. And there is no consensus. Well, that's not really true, is it? I mean, it takes more than a split second for someone like this. Well, we know in this case that it took four shots by Deputy Block before he fired a shot that disabled Mr. Kendrick. It was only taking one shot from Mr. Kendrick to disable Deputy Block. And that could have been done very quickly with a shotgun, which is not a gun that requires precise aiming. The point is there's no consensus, robust consensus of authority that says that under those circumstances, that he was holding a shotgun in one hand, whether it be the right or the left hand, doesn't matter, that he could not have wheeled around and shot Deputy Block when Deputy Block also knew. You know, that really is a question that should be tried. But what do you do with the George case where we said there has to be some kind of movement or threat, even if he's holding a gun, to make sure that he doesn't get shot? The George opinion was not based upon the second prong of qualified immunity. In fact, if you read Judge O'Scanlan's opinion, he's very careful to point out that the defendants in that case, the officers, did not raise the second prong of qualified immunity, either in the district court or in the Court of Appeal. Therefore, this court wasn't going there. Now, there was a very robust dissent in George, and one wonders if that, if they had raised the second prong of qualified immunity, whether the court would have reached the same result. But George involved a case where it was undisputed, well, I take that back, the version of facts accepted by the court in George was that an elderly man had one hand on his walker and the other hand he held a pistol, which was pointed straight down. Those are not the facts of this case. The facts of this case... They're not that far from the facts of this case. They're pretty far. A pistol is a gun that's not capable of doing that much damage, and we have a guy who's elderly and holding a walker. In this case, we have a robust younger man who's holding a shotgun and has already threatened to shoot someone, at least that's what the deputy has been told. That's a different set of facts. Well, I'm sure the Supreme Court's been pretty clear, in this sense, the Supreme Court has been clear that we need to find cases that are on point. However, it does strike me as parsing it pretty carefully to say it has to be the exact same weapon and the same age. So, I mean, even for someone who agrees that qualified immunity has been overextended, I think, or has not been granted liberally enough, I think your argument is pretty tough on that claim. I mean, I don't even see any evidence, even disputed evidence, that he was threatening... He hadn't threatened the deputy. He had not put down the shotgun in order to do so. That's undisputed. Yeah, but is that the test? If you order someone to put a gun down and they don't put it down, then the officer's free to shoot? It's part of the totality. Well, it's part of the totality, but I mean... The totality of undisputed facts is the deputy knew that this man had just threatened to shoot someone, that this man had a shotgun in his hand, and that this man ignored commands to put the gun down. That's the totality of circumstances in this case. And you won't find, George or no George, you won't find a case that has that level of specificity. Do we really want to immunize officers who shoot when there's been no threat, there's just a holding of the gun and a refusal to, in these circumstances? You don't have to. All you have to do is find that there's no clearly established persuasive consensus of authority that says under these circumstances that it's a constitutional violation. Because remember, this has to do with know this, whether a reasonable person is on notice that this conduct violates the Constitution. If you're a deputy who's looking at a guy with a shotgun, and you know that it would take him a split second to wheel it around and shoot you, and you know he's already threatened to shoot someone else, and you know he's ignored your commands to put it down. If we find qualified immunity here, then the next case is going to say we'll rely on this case to say that you can't shoot someone in that situation. Well, it seems like we could find there was a violation of constitutional rights here, but grant qualified immunity to protect him in a future case. Exactly. And my opponent in this case has really argued the first prong of qualified immunity, which is what George was about, and that's a different analysis. And we'd probably lose under the first prong of qualified immunity, but we're just talking about the second prong of qualified immunity. And you would not have to make a ruling that this is constitutional conduct. All you would have to do is make a ruling that there's no clearly established law that put people on notice. And then the next case is going to come and say he wasn't in the same position, so therefore this is different. At some point the law is clearly established that you can't kill somebody unless he threatens you, or does something. Well, that's not even what George says, is it? The George case talks about a furtive gesture. You know, it doesn't have to be pointed out. Well, but you didn't really have that here either. Well, in totality you did. Okay. So one of the, I know you want to reserve five minutes, but one of the questions I do have here, the detention does seem particularly problematic. And I guess on the other hand, while it's problematic, I think it's also each of the seven defendants should be treated differently. And I don't feel like they should all, you know, be in there necessarily. And I don't know how much you can address that in the next minute. Well, it's not that hard to do because we know what each of them did. You know, here's a woman who's sitting out on the grass, just watched her husband being shot. It's hysterical. And the deputy says, rather than have you here on the grass, you know, with all these gawkers around, we're going to put you in the back of this patrol car. And then I believe it was... We're going to lock her in the cruiser. Well... And then take her down to the police station. No evidence that, well... And interrogate her for hours. Interrogate? Listen to the tape. Listen to the audio. Well, they interviewed her for two and a half hours. You know, it's not anything as adversary as even a deposition. But what was the basis for them to hold her for over seven hours? I mean, I can't even find a case remotely close that would permit such conduct. What you won't find is a case that says that officers can be liable where the subject, where the person being interviewed, hasn't expressed some desire not to be interviewed or to be somewhere else. Now, in this case, the only evidence you have that Mrs. Kendrick didn't want to be interviewed or wanted to be somewhere else is she asked at several points, I'd like to go back home. Now, she couldn't go back home because a search warrant was being executed at home so she couldn't go back into the house. She could have been released. Certainly. And if she had asked to be released, she would have been released. And there's been testimony to that effect in the record. To me, this behavior of the officers is quite aberrational and that may be one reason why you don't have cases that, you know... I don't see anything aberrational about wanting to interview a witness to a fresh homicide. Who just saw her husband being killed by the police. If she had said, no, I can't do this. No, I don't want to do this. Let's be clear here. I think you're right. They could interview her.  Then the detectives Barnes and Hillen came in after she'd already been detained for four hours and interviewed her for two and a half hours. That's my analysis of the facts here. Am I way off base? The question is not whether she was detained or even whether she was seized. The question is whether she was unreasonably seized. Unreasonably seized. And you don't have any... I think it was unreasonable to keep her for seven hours. Look at the Lincoln case from the Fifth Circuit. That was a case where the witness was actually initially put in handcuffs. And that's the case from just last year where the Court of Appeals... And how long was she detained? I didn't see... You know, this isn't... The Supreme Court has never said how long you can keep somebody under those circumstances. All we know in this case... A reasonable time. We have to agree from this case that as soon as she asked the Hillen and Barnes, you know, how long do I have to stay? They explain that we're not keeping you here. You can leave any time you want. And her daughter came and picked her up. Okay. You asked for five minutes. Do you want to reserve the remainder of your... I have one. Oh, go ahead. Before... About separating these different officers. Your only argument in the district court for qualified immunity for the officers who seized Cynthia was that none of them told her she was not free to leave. Now you make specific arguments for each officer. So why haven't you forfeited those arguments by not letting the district court sort it out? Well, the district court certainly... You know, we always want the district court to look at each individual individually. You know, I'm somewhat... You know, it gets frustrating for me because full disclosure, I was the trial attorney in Maxwell, which was the case that this is all based on. And I know in Maxwell, the court, again, did not make any individual analysis of what each individual deputy did. But you didn't make that argument in the district court. That's my point. Yes, you can do that, but you didn't. Well, we certainly put forth what each... If you look at my... If you look at the points and authorities in support of summary judgment, you see where it did go for each individual. It specifically said what each individual did, and it specifically said what the district court ruled. It was individual by each individual. Yes, it was. Check the record. Thank you. I will. You deserve the remainder of your time. Thank you. It pleased the court. Good morning, Your Honors. Brody McBride on behalf of appellee plaintiff Cynthia Kendrick. I want to start, Your Honors, by discussing the issue of jurisdiction and whether this court even has jurisdiction to hear this appeal. For two reasons, we believe the court does not have jurisdiction. First is, as opposing counsel mentioned, this is an interlocutory appeal subject to the collateral order doctrine, a very narrow exception to the final judgment rule, which only gives rise to a very narrow jurisdiction for appellate review. It does not extend to determinations of whether or not there are disputed issues of material fact. As a precondition of bringing an appeal like this, the appellants have to assume the facts and the light most favorable to plaintiffs and have to draw all reasonable inferences in the plaintiff's favor. This court applied that principle in a recent case, Maddox, where they said an appellant had failed to present the facts and the light most favorable to plaintiffs, and they said that they had forfeited the right to make a legal argument based on those facts, and therefore they did not have jurisdiction to hear the appeal. This case is replete with the defense counsel arguing their version of facts, cherry-picking facts, and lapsing into disputing the sufficiency of the evidence, arguing why plaintiff's facts. And you're saying Maddox precludes us from going in and just applying the facts and the light most favorable to the plaintiff here and determining the legal questions. Yes. That was the exact issue in Maddox, and this court said we're not going to comb the record for appellants and manufacture their arguments for them. They didn't make their argument based on the facts and the light most favorable to plaintiffs as to why they're entitled to qualified immunity. Therefore, they forfeited the right to make that legal argument. There is no jurisdiction. Secondly, at least insofar as the excessive force claim is concerned, the district court found this portion of the appeal to be frivolous, and under this court's holdings defines a frivolous appeal as baseless or so unfounded as to not even invoke appellate jurisdiction. So for those two reasons, we don't believe this court has jurisdiction to hear this appeal. So assuming we do have jurisdiction, I guess your position would be that as to the multiple defendants, that that argument had been waived because it hadn't been properly preserved as to the individual defendants? Well, that would be our first argument, Your Honor. The defense, as the court correctly noted, in their MSJ briefing lumped the defendants together, and that's how the district court addressed it in order. But secondly, we believe that the district court, for purposes of this court's precedent, did give individualized attention to each of these defendants. It's just this is a case where the facts aren't really that complicated. Well, if that's the case, then why can't we parse through the record? Because I think some of these defendants, as I look at it, some of these defendants probably should be kept in the case and some shouldn't. And, I mean, Deputy Norrie, for example, he drove her to the police station. I'm not entirely sure that that makes him liable for the seven-hour detention, which seems to be the largest basis. So could you address that, why he should be kept in the case as responsible for the full seven-hour detention? Sure, Your Honor, and I think I just need to reframe the issue before I answer the court's question, if that's all right. What's at issue here is whether or not these officers were on notice by a body of relevant case law, particularizing the facts of this case, that their conduct with regard to Ms. Kendrick violated the Fourth Amendment. Understood, but that's sort of my question, is what is their conduct as opposed to other officers' conduct? Well, at the time of this incident, all of these deputies were on notice of the Maxwell case, this court's ruling in Maxwell, which found that a five-hour investigatory witness detention where they detained the family members at their house and one of the individuals was allowed to freely walk around the driveway, that was unreasonable, unconstitutional. I think I'm agreeing with you. So I'm sort of asking why, tell me why Deputy Norrie should be bound by that. He wasn't involved in any kind of a detention that was five hours long at all, at least as far as I can tell. He drove her to the police station. Well, no, Deputy Norrie, he was there for the shooting. I understand. So he knew that the only basis for detaining... Was because she was a witness. Was because she was a witness, and he was on notice of Maxwell saying that investigatory witness detentions may be permissible, but they need to be minimally intrusive. He then took her at that point, and he's the one that placed her in the SUV with the doors locked and the windows up. For 20 minutes. Yes. And then he also accompanied Deputy Collis to the station. So he knew at the time they were driving him to the station, he was in the car with them, that they were going to the station, she's barefoot. The only basis was that she had witnessed the shooting. Yes, but you just acknowledged that he knew that they were going to the station, but that doesn't bring him into the detention. Are you saying that there was a plan? You know, that he was doing the facts most favorably to the plaintiff, that this was all part of this operation to take her there and detain her there for a long time? I don't quite know how you get that. Well, no, you know, so each of these officers were on notice. I mean, you know, this is a small substation. They were all listening to the radio. This incident was on both channels of their radio. They all knew what had happened. They all knew that the only reason she was being detained was because she was a witness. So based on Maxwell they had notice, locking her in the police vehicle solely on the basis that she's a witness goes beyond the minimally intrusive notice that they would have gotten from Maxwell. I mean, is that clearly established under Maxwell? I think that's an open question, to be honest with you. Where I'm hung up is on the detention, and I'd just like to see who's connected to the detention. I'd just like a straight answer for who's connected to the detention and who's not. Because, I mean, yes, maybe we accept your argument that putting her in the police vehicle is enough. If we do, it seems like almost all these officers come in. But let's say that we find it's the extended nature of the detention. Who falls within that action and who doesn't? I mean, for example, Detectives Barnes and Hillen, it seems to me, do because they came in after she'd been detained for four hours and then took two and a half hours to interview her. I don't know why that couldn't have been done at the beginning. So on the other end of the spectrum we have Deputy Norrie, who just put her in the vehicle for 20 minutes and drove her to the station. Where do these others break out on, you know, some Deputy Worthington said guarded her for hours. Is that correct? He guarded her. I mean, what was his involvement, do you know? Yes, Your Honor, and I think what I can do is I can rank these deputies. I think that would be helpful. Level of involvement. But I think I do have to recognize that if we take the court's concern to its logical conclusion, if you have an incident which is typical in modern law enforcement, you've got a number of individuals that are involved at various points. Well, and naturally those who come in at the latter part of it are going to have more culpability. I mean, I think that Detectives Barnes and Hillen particularly should have been a little more responsive, given that they knew that they were stepping in four hours into the situation. Sure. So I would start with Detectives Barnes and Hillen. They knew at that point they had interviewed everybody else. They had already interviewed Norrie and Block and everybody else, so they knew exactly what was going on. They knew that she had been detained solely because she was a witness. Deputy Worthington was the one that was guarding Ms. Kendrick just prior to them coming, and he at his deposition testified that Deputy Hillen and Barnes then took custody of her, and he believed she was in custody at that point. They then went on to question her at length, not even about the shooting, but about matters such as Mr. and Mrs. Kendrick's sex life and stuff like that. So I think that they would be the most culpable under Maxwell. Secondly, I do think Deputy Norrie initially putting her in that locked vehicle, walking away and leaving her, and then accompanying them to the station. The only reason she's coming is because she was a witness to this. Well, she wasn't just a witness. She was the sole witness, and does that change the analysis somewhat? I mean, look, it's hard. Clearly here's somebody who's just seen their husband shot, but there is a need to maintain the only witness to the incident. Well, I think this was addressed in Davis v. Mississippi, the Supreme Court case that I believe the Maxwell court cites as well that says, you know, officers are free to ask witnesses to an open crime for information, but they certainly aren't allowed to compel them to answer. So, you know, they certainly could have asked her, and if she had consented that would have been fine, but the problem is she didn't. It was obvious that she didn't consent, and she said as much, I want to go home. They were taking her to the station to be questioned. To interrogate her. They all knew that. So this was clearly an investigative witness detention, and this goes far beyond minimally intrusive what was allowed in Maxwell and even the case that Maxwell cites, the Illinois v. Lidster Supreme Court case involving the roadblock. So to continue with the deputies. Well, let me ask you, Lieutenant Brown Lisk, she instructed the guard at the room. Was she also responsible for her being detained? Would Lieutenant Brown Lisk have had the authority to say we're going to let her go right now? Yes, she was the patrol lieutenant. She responded shortly after the shooting, within 10 to 20 minutes. At the time she made that call, she was the ranking law enforcement officer on scene. She's the one that called and said, Deputy Worthington, I want you to go and relieve Collis. Keep her in the interrogation room until Barnes and Hillen can get there to interview her. So really Worthington and the other officers are acting at her instruction. Okay. Sergeant Lopez directed Ms. Kendrick to be driven to the station. Is that correct? Yes. Was he involved at all after that? That's his only involvement in the detention, as far as we're aware. But at the time he made that statement, he was the ranking officer on scene. Well, didn't he tell them to take her there for questioning? Yes. So I guess that's my point is I just want to be clear about what we're being asked to decide. We've got the seven-hour detention, and I think those involved in the detention fall under that. There's a separate question as to whether just detaining her at all and asking her any questions would be enough to keep them in the case. And, I mean, Sergeant Lopez didn't say take her and, you know, keep her out of the way for several hours or something like that. No. So it's just a – I'm just trying to get a flavor for that. And then Collis, how long did he actually guard her in detention? So Collis was responsible for her off the top of my head between a half an hour and an hour. But Deputy Worthington, I think, is particularly culpable with regard to her unreasonable detention in that he – Worthington, not Collis. Worthington. Yeah, yeah, yeah. No, I'm with you. I hear you. Okay. Okay. Sorry, I've taken up more time than I need. No, no, no. That's all right, Your Honor. But I want to give my colleagues a chance to ask questions, too. Sure. And with regard to the individualized analysis of qualified immunity, we believe that the district court had done that. It's essentially the same analysis as to each. So on that respect, I do think that the court has everything in front of it. It needs to make that determination. I don't think this calls for a remand and further briefing. But in viewing the issue in this case, whether or not Deputy Block was on notice that his actions violated Mr. Kendrick's Fourth Amendment right to be free from excessive force, and whether or not these other deputies were on notice that their actions with regard to Miss Kendrick violated her Fourth Amendment right against unreasonable seizures, the clearly established law in our answering brief, I think, establishes, as the district court found in this case, the answer is yes. We would ask that the court deny these officers qualified immunity and affirm the district court's order in that respect. And unless the court doesn't have any other questions, I'll relinquish the remainder of my time. Thank you. Thank you. First point, to get back to Judge Lefkoe's comments about the individuals not being separated out, I don't have the excerpts of record number, but the district court document 70-1 at pages 9 of 31 and 10 of 31, you'll find the individuals in our motion for summary judgment, the individuals were separately described as far as their separate conduct was concerned. It seems to me that once the district court made the determination that there are sufficient disputes of material fact here that I'm not going to grant qualified immunity, then why not just let this case go to trial and let the jury sort out who was involved and who was entitled to be exonerated? Because we have an open legal question here. The legal question is, can there be liability or is there clearly established authority where the person being questioned does not object to being questioned? Your Honor, Judge Schroeder is shaking her head, but remember that in the Maxwell case, the facts of that case were that the Maxwells asked to go to the hospital to be with their daughter, who had just been shot. They wanted to be somewhere else. That was an indication that they were not consenting to stay and be interviewed. You don't have those facts here. You don't have any facts that the... He was dead. All she wanted to do, she wanted to go back into the house to take care of her dogs. Okay? I urge you very strongly to read the record, to read all of the testimony in the record, and you'll see this. She wanted to go back into the house and take care of her dogs. They told her, we're going to take care of your dogs for you, but you can't go back into the house. They're doing a search warrant, which, as we all know, Mueller v. Mina, you could actually handcuff somebody if you're searching their house. They certainly didn't do anything like that here. Okay. Counsel, you've used your time. We've got your argument. Thank you very much. Thank you. So the Kendrick v. County of San Diego case is submitted, and we will next hear argument in Ashley Lauren Watts v. Christine Maroney, case number 18-55833.
judges: Schroeder, Lefkow, Nelson